Good morning, Your Honor. Good morning. My name is Jefferson Dorsey. I'm here on behalf of Mr. Jaramillo, and I'm with Michael Burke, who's co-counsel on the case. To begin with, I'd like to reserve two minutes for rebuttal. You may. Just watch your time, because the clock's there. Mr. Dorsey, I should tell you, I don't know how far you've gone into the history of the Schlupe case, but I was on the Eighth Circuit panel in the Schlupe case, and indeed Justice Stevens and the other justices found Judge Haney's dissenting opinion far more convincing than the opinion in which I joined. So I know a little bit about Schlupe, and I'll be interested in what you have to say about it. How is it alike this case or different from it? Thank you, Judge Gibson. I'm aware that you were involved in the Schlupe case. This is similar in many ways. First of all, the certificate of appealability just asks whether or not there's been sufficient evidence to pass the Schlupe gateway. Basically, whether it's more likely than not that no reasonable juror would have convicted Mr. Jaramillo in light of the new evidence. Our position is that following the law, in light of the new evidence, a jury would have to exonerate Mr. Jaramillo. Mr. Jaramillo acted in self-defense, and I realize that almost all of these cases are fact-driven, so if I can just speak of the facts briefly. First of all, to put this in context. I think we're familiar with the record, so I think the question, because of your time, I want to make sure we address it. You're asking for what, an evidentiary hearing, I assume, as to the credibility of Gibson, the missing or the undiscovered witness? Well, Your Honor, actually, I would ask that we be allowed to pass through the gateway and actually reach the substantive claim, which is a Brady violation. So how do we know that this witness is credible? Well, Your Honor, I think by examining the record. Well, is that something we should determine at this level? As to whether or not there's sufficiency to pass through the gateway, yes, Your Honor. How can we do that? How do we know whether this witness is credible? Well, to begin with, we examine the circumstances. Wayne Graham is an inmate who's been locked in the penitentiary since this incident has had all the other. Well, I understand, but how can we determine whether this prisoner is credible? Prisoners don't always have the history of being credible, so how do we know this isn't a jailhouse conversion or something like that? Why do you resist an evidentiary hearing? I don't resist it, Your Honor. I would welcome an evidentiary hearing. At the evidentiary hearing, I think that I can show from the state's own evidence there's nothing in the record that disproves what he's saying to begin with. The only evidence the state had was one guard who witnessed the very end of the attack. Nothing that he said or witnessed disproves anything that Wayne Graham says. Wayne Graham says that Mr. Jaramillo grabbed the knife with his right hand. We know from the record Mr. Jaramillo's right hand was cut. I understand. I sat on a murder jury once where the defendant sat in the courtroom and neatly tailored, when he took the stand, his testimony to fit perfectly into the testimony of all the other witnesses. So assuming that Mr. Graham wasn't coached to deal with the front end of the altercation, again, my concern is, speaking for myself, I don't feel comfortable as an appellate judge making a determination of the facts. And the reason I'm asking about the evidentiary hearing is because this case is covered by AEDPA, I assume. If it is, does that affect your burden of proof at this stage in order to obtain an evidentiary hearing? Well, Your Honor, that question was not actually certified, but, of course, I have looked at that and the State did raise that. And I would say that, no, it does not. Courts, including the Supreme Court, have not applied the clear and convincing standard that's in AEDPA to cases of actual innocence. And this circuit court has decided not to decide whether or not it applies in several cases, the most recent being the En Banc case of Sistrom v. Armanakis. And we sort of beg the question or refuse to answer it. And if that is dispositive to this case, I would certainly be happy to brief that and go into it. But to begin with, Your Honor, no court that I'm aware of has ever said that this equitable remedy that was created by courts to prevent a miscarriage of justice is going to be applied with a higher standard. I think, actually, recently in the Calderon v. Thompson case, the United States Supreme Court again talked about the sloop evidence of innocence and that it was a lesser burden, it was more likelier than not. Also in the Boosley case. So I think that's still viable. And I don't really believe that that's the issue that we face here. Just to kind of put it and phrase it in sequence. Now, as I understand it, the district judge denied this on the basis of procedural bar. Yes, Your Honor. And you're contending that that isn't the only thing to be looked at, the actual innocence and miscarriage of justice. Yes, Your Honor. Okay. Now, the miscarriage of justice is what? The miscarriage of justice is that Mr. Jaramillo is actually innocent of first-degree murder. Of first degree. Now, there's no problem that he's guilty of killing a guy. Well, Your Honor, you used the word guilty. I would say that this was a lawful killing based on the self-defense law in Arizona. Now, how would there be self-defense when the other two prisoners were holding him and he was stabbing him 19 times? Well, Your Honor, the state's witness only saw the very last stab. And he saw the two men holding him. And putting this in context, we don't know if those two men were trying to pull them apart, if they were trying to save their friend. That's our contention is that the two other prisoners were trying to save Mr. Jaramillo. They jumped into the fight. Plus the 19 stab wounds. That's a lot of stab wounds. Admittedly, I know that that would raise skepticism, but any kind of use of deadly force is justified if one is defending oneself. And, again, to put it in context, these men are in a prison locked in a tiny exercise cage much smaller than this courtroom. Mr. Abeyta pulls a knife, goes after Mr. Jaramillo. Mr. Jaramillo struggles with him, pulls the knife away with his right hand. The other men jump in. They all fall down as Mr. Jaramillo is stabbing him. We can tell by the timeline how quickly the guard responded that this all happened just instantaneously. We also know that Mr. Abeyta was still alive at the end of the attack. He didn't actually even die until he got to the hospital. So as far as Mr. Jaramillo is concerned, he's still a deadly threat to him. And under the law of self-defense, that's a lawful killing in Arizona. Excuse him from any, exonerate him from any kind of criminal punishment? I would say so, Your Honor. I mean, what's Arizona law on the point? Are you just talking about degree of murder? I thought your brief said it's an absolute bar to any. It is, Your Honor. It's a lawful killing. To paraphrase another circuit court, if Mr. Jaramillo were an executioner and committed a killing and was prosecuted for murder, he would have committed the killing, but he would be actually innocent of a murder. And in Arizona, and this goes back to territorial days, a person is justified to use deadly force to kill someone that is threatening them with deadly force, and that's exactly what happened here. What did the other two prisoners that were holding him testify to? The only testimony that was ever entered by either of them was a post-conviction, and the prisoner testified that from day one Mr. Jaramillo asserted that he was innocent and that he did not want to plead guilty. I think I'm beginning to get into my rebuttal time, Your Honor. Okay, Judge Gibson, do you have any questions? No further questions, thank you. Okay, let's reserve time. Mr. Howe? Thank you. My name is Robert Howe. I'm representing respondents in this matter. The first thing that we must deal with is whether Snoop survives the enactment of AEDPA. And in 2254E2, it states that the proper standard for having evidentiary hearings in habeas matters is clear and convincing evidence. So that is the standard that must apply here. This court has declined to resolve that claim in other cases, but in the last case where this issue was raised, this court said that it declined to address the issue because the petitioner in that case wasn't asking for an evidentiary hearing. And that's precisely what we have in this case. What about Majoy, where we went ahead without addressing the issue and went ahead and ordered an evidentiary hearing? Your Honor, if this court decides in any particular case that there ought to be an evidentiary hearing, I would continue to maintain that the proper standard is the E2 standard and not the Snoop standard. But even if this court did apply the Snoop standard, there is clearly no need for an evidentiary hearing on this issue because the affidavit in the context of the evidence in this case is entirely incredible. The evidence that was presented in the guilty plea hearing was that the victim was stabbed 19 times. One of the defendants held the victim in a headlock. The other held the victim's feet. Even if the petitioner in this case wanted to raise a self-defense claim in Arizona trial court, there is just no chance that that would ever succeed. Why is that? As I understand the evidence, there's no dispute that nobody, I mean the state's witness, did not see the beginning of the fight. Exactly. And there is evidence. Is there not that Jaramillo had a cut on his hand, as he says? Yes. That's correct. And so this witness who was not disclosed to Jaramillo now comes forward and says, well, I saw the beginning and it was an attack initiated and under, and I'd be interested in your view of this, under Arizona law, if it's self-defense, that's a defense to murder. I'll answer your first question and then I'll move to your second. It may, it might be a close case if the victim was stabbed once or if he was stabbed twice or if there is no evidence of him being held down. What we have here is 19 stab wounds and many of those wounds were quite mortal. So even under Arizona law, if there was put forth a claim of self-defense, at some point the claim of self-defense would cease because there is no reason when the victim was being held down by his head and by his feet for the victim to be stabbed 19 times. That is simply incredible. What was the evidence as to how the other two prisoners were holding the victim? The testimony, as I understand from the grand jury testimony, which was used to make the factual basis that one defendant had the victim in a headlock. In a grand jury? Yes. That was, that served as a factual basis for the guilty plea order because the defendants didn't want to testify to the factual basis. To move on to the second question. In Arizona, if a defendant proves a valid claim of self-defense, then the jury does have to find him not guilty. But what we have to reflect upon is what the meaning of the great way is. It is not a question of legal innocence. It is a question of factual innocence, as was stated in Boothway. Was there any hearing at which the other two prisoners had testified to the way that they were holding him? The three defendants pled guilty at the same proceeding, and the grand jury testimony served as a factual basis for the plea for each of them. The co-defendants never testified. Boothway states that what is important is factual innocence. What is uncontroverted here is that the... I don't understand why you make this distinction. If Arizona law says if you kill somebody and it's not a criminal act, why isn't that factual innocence? The basis of sloop is that it is unjust to execute someone who is actually innocent. You mean that they never committed the act at all? Yes. So even though the act is recognized in Arizona as self-defense and is not criminal, it's okay to go ahead and execute somebody for that? Well, Your Honor, there is a large question whether sloop applies outside of the capital context. But we'll go... In the Ninth Circuit, we've applied it that way. Yes. But you said capital, so I'll take it to the capital level. You're saying if this were a capital case, even if it were established beyond doubt that it was self-defense and Arizona would say that's not criminal, it would still be okay to execute? It would be a question whether it would be a manifest injustice. The cases that have dealt with that claim have been where the defendant did not commit the act, as in sloop, as in character. It is more unjust to punish someone who wasn't even there, who did not commit the crime at all, as opposed to when you're dealing with someone in your eyes here who actually did the killing. I think... What if at a hearing it was determined that the victim actually was the aggressor and that at least initially the defendant here was was defending himself or that this was a reaction to an attack? That would certainly take away the premeditation aspect. So it wouldn't be he would be actually innocent of first degree murder, would he not? That may be your... There are cases, and I'm sorry I'm not prepared to identify them to you, but there are cases that say that sloop does not apply when you're just claiming a lesser culpability, which is what the situation would be as you're positing it. Okay. Thank you very much. Mr. Gibson, did you have any questions before Mr. Howe steps down? No questions. Thank you. Thank you. Counsel will give you two minutes for rebuttal since the statement went over a minute. I'd like to make a couple of brief points, if I may, Your Honors. First of all, the grand jury testimony was hearsay testimony by one of the investigating officers who paraphrased what the officer said that he saw. If we look back in the record at the incident reports, there's no description of how anyone was holding anyone, and there's even a variance between the number of stab wounds that the guard actually witnessed between the grand jury testimony and the original report that he filed. Was there any dispute from the autopsy report that he was actually stabbed 19 times? No, Your Honor. Any suggestion anybody else had access to the knife besides Jaramillo? No, Your Honor. Okay. I'd also like to point out that in Arizona, once a defendant raises a reasonable doubt about self-defense, the burden is upon the state to prove beyond a reasonable doubt that it is not self-defense. In other words, the state has to prove beyond a reasonable doubt that it's an unlawful killing because if it is self-defense, it's a lawful killing. And I'm worried because I think that from the inception of this case, because these men were all inmates and they were locked away in a prison, that that colors the way we look at these facts. This might be different if Mr. Jaramillo had been in his living room and we're talking about a home invasion and he fought the man off. The man's still alive. When he finished stabbing him, the police stopped the fight for some reason. I ask the court not to let that color their opinion on this, to take it in context, look at the circumstances that they're locked in a pen together, but not let the fact that they're prisoners color these events. I think that there's forensic evidence. I think the state would probably argue that we sometimes go the other direction. We're too friendly to prisoners perhaps. Well, I didn't want Mr. Howe to feel that we didn't understand that there are two sides to that argument. Absolutely. I would like to point out finally that this isn't impeachment evidence. This isn't a battle of the experts. This isn't some kind of weak alibi. We're talking about a lawful killing committed in self-defense. What is your opinion on the application of sloop to actual innocence of a first degree as opposed to other degrees of murder that could be charged? I think it's applicable because, and I think perhaps the Supreme Court might agree, because of Calderon v. Thompson and in sloop, I think Justice Stevens made it clear that he wasn't talking about necessarily somebody who actually wasn't there. He was talking about having confidence in the outcome of the trial. If a petitioner is not guilty beyond a reasonable doubt of a first degree murder, then he's actually innocent. He comes into the case with a presumption of innocence. The state hasn't met its burden and hasn't had to face it. That's particularly serious here where we're talking about an underlying Brady claim where this evidence could have been there in the beginning and we wouldn't be here some 19 years later. Just so I understand that answer, if the state had charged first degree in this case and the evidence had come out and the jury had concluded, would have concluded, that there wasn't premeditation but that they could find second or manslaughter, you still say, and I take it that would be possible under Arizona law? Yes, Your Honor. Okay, so that that would leave Mr. Jaramillo still convicted of a crime but simply not first degree, and you're saying that would be still sufficient to satisfy Schlock? I believe so, Your Honor. But again, my position is that he committed a lawful killing in defense of his life. So he's not guilty of any crime. All right. Thank you, Your Honor. Okay, the case just argued will be submitted. We thank counsel for their arguments.
judges: Hug, Gibson, Fisher